```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
NICHOLAS ALVAREZ,                              :
                          Petitioner,          :      **OPINION AND ORDER**
                                               :
v.                                             :      18 CV 177 (VB)
                                               :      11 CR 169 (VB)
UNITED STATES OF AMERICA,                      :
                          Respondent.          :
--------------------------------------------------------------x
```

Briccetti, J.:

  Nicholas Alvarez, proceeding pro se, has moved under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence, alleging his trial counsel, Edward O'Callaghan, Esq., and his appellate counsel, Benjamin L. Coleman, Esq., provided constitutionally ineffective representation. Alvarez's four grounds for relief can be summarized as follows:

  1. Mr. O'Callaghan unreasonably failed to file a motion to suppress evidence obtained as a result of a traffic stop on February 3, 2011, a motion Alvarez claims would have been granted;

  2. Mr. O'Callaghan unreasonably failed to pursue a claim of prosecutorial misconduct or otherwise "take the government to task" in light of inconsistent statements made by some of the government's witnesses;

  3. Mr. O'Callaghan failed to provide Alvarez with reasonable advice regarding whether he should plead guilty prior to trial; and

  4. Mr. Coleman failed to cite an important Supreme Court decision in his appellate brief challenging the District Court's exclusion of certain evidence at trial.

  For the following reasons, the motion is DENIED and the petition is DISMISSED.

1

**BACKGROUND**

Alvarez's motion, his brief in support of the motion and attached exhibits, the government's papers in opposition (including an affirmation from Mr. O'Callaghan), and Alvarez's reply brief and attached exhibits, as well as the record of the underlying criminal proceedings, reflect the following:

On February 3, 2011, a police officer in Westchester County stopped a van in which Alvarez was a passenger because it did not appear to have a rear license plate. The driver had only a learner's permit, which led the officer to ask for identification from Alvarez and two other passengers to determine whether there was a licensed driver in the vehicle. One of the passengers and Alvarez each produced fake identifications. The officer also learned the van had been reported stolen in Virginia. At that point the occupants were transported to the police station for further investigation and the van was taken to the impound yard, where officers conducted an inventory search. Further investigation revealed the nature of the passengers' relationship with Alvarez, which led to Alvarez's arrest and later indictment.

Prior to trial, according to Alvarez, he rejected a plea offer to a sex trafficking count that would have required a ten-year mandatory minimum prison sentence, but he did so only because Mr. O'Callaghan advised him that due to Mr. O'Callaghan's knowledge and experience he could win the case at trial. Mr. O'Callaghan's response is as follows: Several months before trial he had informal plea discussions with a prosecutor who said the government would accept a guilty plea to one count of sex trafficking of a minor, which carried a ten-year mandatory minimum sentence. Mr. O'Callaghan discussed the plea offer with Alvarez, advising him of his sentencing exposure under the proposed guilty plea as compared to his exposure after trial, and discussing the strengths and weaknesses of the government's case. Mr. O'Callaghan told Alvarez he had an

absolute right to go to trial and that the decision to do so, or not, was Alvarez's. Mr. O'Callaghan never advised Alvarez to reject the plea offer, or told Alvarez that, based on his (O'Callaghan's) knowledge and experience, he could win the case or that the government could not prove its case. Mr. Alvarez flatly refused the government's plea offer and told Mr. O'Callaghan he would not consider pleading guilty to any mandatory minimum offense. Mr. O'Callaghan relayed Alvarez's position to the government and had no further plea discussions thereafter. In addition, at no point prior to or during trial did Alvarez express a desire or willingness to plead guilty.

Alvarez also claims he directed Mr. O'Callaghan to file a motion to suppress the evidence obtained as a result of the vehicle stop on February 3, 2011, and that, in his view, the motion would have been granted because there was no legitimate reason for the stop and the investigation that followed. Specifically, Alvarez contends photos attached to his moving papers show that the van's rear window was "not so dark" or mud splattered that the temporary license plate could not be seen. (Pet. Br. at 5). In response, Mr. O'Callaghan states he specifically recalls reviewing the evidence relating to the traffic stop, including that the officer's basis for the stop was that the van's interim license plate was not visible through the van's tinted back window, and concluded there was no good faith basis to make a suppression motion. Mr. O'Callaghan has no recollection of Alvarez directing him to file such a motion.

At trial, the evidence established that from at least June 2010 to February 2011, Alvarez operated a prostitution business in, among other places, Illinois, Virginia, New Jersey, and New York, and routinely used physical and verbal abuse to cause women to engage in prostitution for his financial benefit. The proof of Alvarez's guilt was overwhelming, including testimony from numerous victims, photos and videos from Alvarez's cellphone, online advertisements marketing

3

the victims' sexual services, which were posted and paid for by Alvarez, and documents and other items, including a baseball bat, recovered from the van.  Alvarez was represented at trial by Mr. O'Callaghan, an experienced federal criminal lawyer, and several associates from his law firm. They conducted a vigorous defense on Alvarez's behalf, including, as relevant here, attacking the victims' credibility based on their significant prior inconsistent statements to law enforcement officers and prosecutors.  Mr. O'Callaghan even obtained a stipulation from the government listing one victim's numerous prior inconsistent statements to prosecutors, which on the witness stand she denied making.  And the central theme of Mr. O'Callaghan's summation was that the victims' stories had evolved over time for the purpose of pointing the finger at Alvarez and evading responsibility for serious crimes they themselves had committed.

Alvarez was convicted of several counts of transporting individuals for the purpose of prostitution, coercing and enticing individuals to travel for the purpose of prostitution, and sex trafficking by force, fraud or coercion.  He was acquitted on four counts, including a kidnapping count.  After trial, Alvarez pleaded guilty to one count of failing to register as a sex offender.  He was later sentenced to 235 months' imprisonment, to be followed by ten years' supervised release.

Mr. Coleman represented Alvarez on appeal.  He challenged Alvarez's convictions on several grounds, including on the ground that this Court's exclusion of evidence that the victims continued to engage in prostitution after they left Alvarez violated Alvarez's rights under the Confrontation Clause of the Sixth Amendment, citing the Supreme Court's decision in <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), among numerous other cases.  By summary order dated February 3, 2015, the Second Circuit affirmed Alvarez's conviction, and, on May 18, 2015, the Supreme Court denied his petition for a writ of certiorari.

On April 21, 2016, and several times thereafter, this Court granted requests by Alvarez, who is incarcerated, to extend his time to file a motion under Section 2255. (Docs. ##110, 116, 117, 120, 126, 139).[1] Each time he requested an extension, Alvarez complained in one fashion or another that he had not had sufficient access to his case file and legal paperwork to properly prepare and file his 2255 motion – either because he had been moved or placed in special housing, or because his legal materials had been, lost, destroyed, confiscated or misplaced. The government did not object to any of these requests; indeed, by letter dated November 20, 2017, the government acknowledged that "there may be circumstances warranting equitable tolling of the limitations period, including the numerous, previous uncontested adjournments." (Doc. #138). Although the Court expressed some doubt as to whether Alvarez lacked sufficient time to prepare and file his 2255 motion, the Court granted the requests in consideration of Alvarez's status as a pro se prisoner and because he had in fact been moved several times since his conviction was affirmed in 2015. The final extension was until January 8, 2018. The instant 2255 motion was filed on that date.

**DISCUSSION**

None of petitioner's grounds for relief has merit. Based on the record of the criminal proceedings, as well as Mr. O'Callaghan's detailed and credible affirmation, the Court finds and concludes that Mr. O'Callaghan and Mr. Coleman provided constitutionally effective representation.

I.  Legal Standards

Under the familiar ineffectiveness of counsel standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), to prevail in this case petitioner must (i) demonstrate that

---

[1] All references to "Doc. #___" are references to the ECF docket in case no. 11 CR 169.

counsel's performance fell below an "objective standard of reasonableness," meaning it amounted to incompetence under "prevailing professional norms," id. at 688, 690, and (ii) affirmatively prove actual prejudice, meaning "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694, not merely that an error "had some conceivable effect on the outcome." Id. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential," and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Indeed, this Court will not second-guess strategic or tactical decisions made by counsel. This is because there are many ways to provide effective assistance in a given case. "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." Harrington v. Richter, 562 U.S. 86, 106 (2011) (quoting Strickland v. Washington, 466 U.S. at 689).

When a petitioner claims ineffective assistance based on counsel's failure to litigate a Fourth Amendment claim competently, the petitioner must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

And in the context of plea negotiations, a defendant must establish that his attorney either failed to communicate a plea offer or failed to provide objectively reasonable advice about the decision to plead guilty. See United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998). However, because the decision whether to plead guilty must be made by the defendant, an

attorney "must take care not to coerce a client into either accepting or rejecting a plea offer." Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000). Counsel's determination as to how best to advise a client in this area "enjoys a wide range of reasonableness because '[r]epresentation is an art,' and '[t]here are countless ways to provide effective assistance in any given case.'" Id. (quoting Strickland v. Washington, 466 U.S. at 689, 693). And of course a defendant would also have to show prejudice; namely, that he would have accepted the plea offer and the conviction and sentence "would have been less severe than under the judgment and sentence that were in fact imposed." Lafler v. Cooper, 566 U.S. 156, 164 (2012).

II.  Timeliness

The government argues the instant motion was not filed within the one year statute of limitations set forth in 28 U.S.C. § 2255(f) and the relevant circumstances do not warrant equitably tolling the limitations period. Although the motion was filed more than one year after the judgment of conviction became final – here, the date the Supreme Court denied certiorari, May 18, 2105, see Clay v. United States, 537 U.S. 522, 527 (2003) – the Court concludes the circumstances are sufficiently "rare and exceptional," Green v. United States, 260 F.3d 78, 82-83 (2d Cir. 2001), that the limitations period should be tolled. Although the Court is dubious about Alvarez's various excuses for why he could not prepare and file his motion on time, the Court feels constrained to accept at face value Alvarez's representations, made over a period of years, and repeated in the motion itself, that he was moved several times or placed in special housing, and that his legal materials had been, at one time or another, lost, destroyed, confiscated or misplaced, and because these things happened he did not have sufficient access to those materials to prepare and file a timely 2255 motion. Also, the Court did in fact grant Alvarez's periodic extension requests – the first of which was made prior to the expiration of the one year

7

period – to which the government did not object, and which, to be fair to Alvarez, would reasonably have led him to believe he had additional time to file his motion.[2]

In short, under the unique facts of this case, the Court finds that "extraordinary circumstances" prevented Alvarez from filing a timely petition, and that he "acted with reasonable diligence throughout the period he seeks to toll." Smith McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). The motion was timely filed.

III.    Ineffective Assistance Claims

Although timely, Alvarez's ineffective assistance claims are without merit.

A.     Failure to Challenge Traffic Stop

Regardless of whether Alvarez demanded that trial counsel file a suppression motion challenging the traffic stop, Mr. O'Callaghan's decision not to file the motion clearly did not fall below an objective standard of reasonableness.

The Court had the opportunity to observe Mr. O'Callaghan's performance as Alvarez's counsel throughout the course of this long and difficult case. At all times, Mr. O'Callaghan acted with professionalism and diligence. He did not challenge the traffic stop, but he did file several other pretrial motions, which the Court granted in part, including dismissing two counts of the indictment for lack of venue. The Court also knows Mr. O'Callaghan to be an experienced and competent federal criminal lawyer. Reviewing the evidence as to possible pretrial motions, and deciding whether there is a good faith basis to make a particular motion, is what good criminal lawyers do. Mr. O'Callaghan specifically recalls reviewing the evidence and

---

[2] Technically, the Court did not have the authority to extend Alvarez's time to file prior to when he actually filed his motion. See Green v. United States, 260 F.3d at 82. But the Court clearly now has the authority to consider the timeliness of the motion.

determining there was no good faith basis to bring this motion. Under the circumstances, the Court finds Mr. O'Callaghan's assertion to be credible.

Moreover, contrary to Alvarez's affidavit, the pictures of the van attached to Alvarez's moving papers do not demonstrate the temporary license plate inside the rear window was clearly visible or otherwise call into question Mr. O'Callaghan's decision not to challenge the traffic stop. Of course it is possible another attorney would have made the motion to suppress, but that does not mean that Mr. O'Callaghan's thoughtful decision not to do so was objectively unreasonable.

Further, the Court cannot conclude that had the motion been made, it would have been successful. The pictures of the van demonstrate that the van, in fact, had no rear license plate, but had only a temporary tag affixed to the inside of the tinted rear window. The officer testified he did not see the temporary tag until after he pulled the van over and asked to see the driver's identification.

Moreover, even if the traffic stop was unlawful, the officer soon discovered that the van had been reported stolen. That fact was plainly not "tainted fruit" of the car stop and it was what led the police to transport the van's occupants to the police station and conduct further investigation, including an inventory search of the van, leading to Alvarez's arrest and prosecution for sex trafficking. See Utah v. Strieff, 136 S. Ct. 2056, 2063 (2016) (unlawful car stop sufficiently attenuated by pre-existing arrest warrant, which was intervening circumstance independent of the car stop that broke causal chain between the car stop and the discovery of evidence on arrestee's person).

Under these circumstances, Alvarez cannot show he would have prevailed on a motion to suppress.

For all these reasons, Mr. O'Callaghan's conduct clearly did not fall below an objective standard of reasonableness or amount to incompetence under prevailing professional norms. To the contrary, his decision not to challenge the car stop was both reasonable and competent. Moreover, because Alvarez cannot prove that the result of the proceeding would have been different, he has not shown actual prejudice.

B.     Failure to Raise the Issue of Prosecutorial Misconduct

Alvarez next claims that Mr. O'Callaghan unreasonably failed to pursue a claim of prosecutorial misconduct or otherwise "take the government to task" in light of inconsistent statements made by some of the government's witnesses. This claim is likewise without merit.

Alvarez contends that at least two government witnesses, Kyla and Amy, committed perjury, because statements these witnesses made to prosecutors during witness prep sessions differed from their previous statements to law enforcement or from their trial testimony, and the prosecutors were aware of and suborned that perjury. Of course, inconsistencies or discrepancies, by themselves, do not mean the witnesses committed perjury. Inconsistencies can also arise from confusion, mistake or faulty memory. Alvarez has not in fact shown that either Kyla or Amy willfully provided false testimony on a material matter, let alone that the government was aware of and used the testimony anyway. Because he has not made this showing, he also cannot show his counsel was ineffective for failing to object to the government's alleged misconduct.[3]

Moreover, any claim that Alvarez was prejudiced by his counsel's alleged failure to raise this issue with the Court is plainly frivolous. Mr. O'Callaghan and his associates conducted a

---

[3]     Alvarez also claims the government was able to use this testimony only because "the Court grant[ed] in advance a motion by the Government not to prosecute perjury." (Pet. Br. at 9). The Court of course did no such thing.

vigorous defense on Alvarez's behalf, the centerpiece of which was that the witnesses were lying. Specifically, counsel repeatedly attacked the victims' credibility based on their prior inconsistent statements to law enforcement officers and prosecutors. Mr. O'Callaghan even obtained a stipulation from the government listing one victim's numerous prior inconsistent statements to prosecutors, which on the witness stand she denied making. And the central theme of Mr. O'Callaghan's summation was that the victims' stories had evolved over time for the purpose of pointing the finger at Alvarez and evading responsibility for serious crimes they themselves had committed.

In light of these efforts, Alvarez cannot show he was prejudiced by Mr. O'Callaghan's alleged failure to raise the issue of prosecutorial misconduct regarding the witnesses' supposedly false testimony. Indeed, because of Mr. O'Callaghan's able and zealous advocacy on Alvarez's behalf, there is no question the jury was fully aware of the victims' credibility issues, yet the jury nevertheless found Alvarez guilty of coercing Kyla and Amy into sex trafficking. Plus, there was substantial other evidence of Alvarez's guilt, including the testimony of other victims, the documentary evidence, and the photos and videos on Alvarez's cellphone.

  C. <u>Advice Regarding Plea Offer</u>

Alvarez's claim that he rejected a plea offer to a sex trafficking count that would have required a ten-year mandatory minimum prison sentence, only because Mr. O'Callaghan advised him that due to Mr. O'Callaghan's knowledge and experience he could win the case at trial, is likewise without merit.

Since Alvarez concedes a plea offer was communicated to him by Mr. O'Callaghan, to prevail on this claim, Alvarez must show counsel failed to provide objectively reasonable advice

11

about the decision to plead guilty. See United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998). This allegation is contradicted by Mr. O'Callaghan's affirmation and common sense.

Mr. O'Callaghan's sworn statement that Alvarez rejected the plea offer out of hand and refused to consider any offer that carried a mandatory minimum sentence is corroborated by the undisputed fact that there were no further plea discussions before trial, and also by the fact that Alvarez never said anything to the Court about any plea offer or about his desire to plead guilty. Accepting Mr. O'Callaghan's sworn statement as true, the Court finds that counsel did provide objectively reasonable advice.

Moreover, Alvarez has not established prejudice. Throughout trial and at sentencing, Alvarez, through counsel, took the position that he was innocent of the charge that he forced the victims into prostitution or that he coerced them in any way. Defense counsel forcefully argued that Alvarez was being prosecuted because the victims were lying about Alvarez to deflect criminal responsibility from themselves, and that they voluntarily prostituted themselves for Alvarez. This defense was incompatible with any possible allocution to a guilty plea to coercing or enticing individuals to travel for the purpose of prostitution, or sex trafficking by force, fraud or coercion, and undermines his claim that he would have pleaded guilty to sex trafficking of a minor or to the other sex trafficking or coercion counts.

Alvarez also has made no effort to explain why, had he pleaded guilty to a ten-year mandatory minimum sex trafficking of a minor count, there would have been a significant difference between what he would have been sentenced to had he pleaded guilty and the 235 month prison sentence he received after trial. All he says is that he missed out on the opportunity to enter an "open plea" – presumably meaning to all counts of the indictment – and that he would received a three-level deduction under the United States Sentencing Guidelines for

12

"acceptance of responsibility." See U.S. Sentencing Guidelines, § 3E1.1. (Pet. Br. at 15). Alvarez has made no effort to show that the sentencing range under the Guidelines on a guilty plea, "open" or otherwise, would have been meaningfully less severe than the range after trial. See Lafler v. Cooper, 566 U.S. at 164. Indeed, if Alvarez had pleaded guilty to the entire indictment, he would have been convicted of ten separate counts, including four counts of sex trafficking by force, each of which carries a mandatory minimum sentence of fifteen years' imprisonment, 18 U.S.C. § 1591(a), (b)(1), as well as kidnapping. At trial, he was acquitted of two of the sex trafficking by force counts as well as the kidnapping count. Moreover, Alvarez's claim that he would have pleaded guilty to a ten-year mandatory minimum count is not plausible considering the credible evidence, described above, that he refused to consider any plea offer carrying a mandatory minimum sentence. Therefore, even if the three-level downward adjustment under the Guidelines would have resulted in a significantly lesser Guidelines range or sentence, Alvarez has not established a reasonable probability that he would have accepted the plea offer had Mr. O'Callaghan provided effective assistance, and thus he has not established prejudice.

    D.    <u>Failure to Cite Important Case on Appeal</u>

Finally, Alvarez contends that his appellate counsel, Mr. Coleman, failed to cite the "most important case that was the difference-maker" – Crawford v. Washington, 541 U.S. 36 (2004) – in counsel's argument challenging this Court's exclusion of evidence of the victims' subsequent prostitution activity as a violation of Alvarez's rights under the Confrontation Clause of the Sixth Amendment. (Pet. Br. at 15). Aside from the fact that Alvarez fails to explain how Crawford was the "difference-maker" and why the citation of that one case would have changed the result, Alvarez appears to have overlooked the fact that Mr. Coleman <u>did</u> specifically cite

Crawford (among numerous other cases from the Supreme Court and other courts) in his brief to the Second Circuit on this issue. See Gov't Mem., Ex. B at 11 (Alvarez Reply Brief on appeal). Thus, Alvarez's ineffectiveness of appellate counsel claim is plainly without merit.

IV.  Alvarez Is Not Entitled to an Evidentiary Hearing

Finally, as to all of Alvarez's various claims, there is no reason to hold any further hearing in this case. In light of this Court's intimate familiarity with the underlying criminal proceedings, Mr. O'Callaghan's detailed and credible affirmation, and the fact that petitioner's "highly self-serving and improbable assertions" are contradicted by the trial record and common sense, no purpose would be served adding to the combined written submissions on the 2255 motion or by otherwise expanding the record. Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001); see Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011).

**CONCLUSION**

Petitioner's motion under 28 U.S.C. § 2255 is DENIED and the petition is DISMISSED.

As petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk is instructed to mail a copy of this Memorandum Opinion and Order to petitioner at the following address:

Nicholas Alvarez
Reg. No. 64636-054
FCI Gilmer
P.O. Box 6000
Glenville, WV  26351

The Clerk is instructed to close case no. 18 CV 177.

Dated: January 14, 2019
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge